08-2912
3/10/10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

## CASE NO. 08-22772-CIV-KING

VISTA VIEW APARTMENTS, LTD.,

    Petitioner,

v.

CHUBB CUSTOM INSURANCE COMPANY,

    Defendant.

**REPLY MEMORANDUM OF LAW IN SUPPORT OF RESPONDENT'S MOTION TO CONFIRM COVERED PORTIONS OF APPRAISAL AWARD**

    Respondent, Chubb Custom Insurance Company ("Chubb"), pursuant to Southern District Local Rule 7.1, files this Reply Memorandum of Law in Support of its Motion to Confirm Covered Portions of Appraisal Award and in response to Petitioner Vista View's Memorandum of Law and Facts in Opposition (DE 48), and states as follows:[1]

    Here, the unanimous appraisal award (DE 43-1) states that it is "[s]ubject to terms and conditions of the insurance policy." Thus, it indicates that the appraisers have not interpreted the insurance policy with respect to coverage, so the insurance carrier is entitled to challenge an element of loss as not being covered. In turn, the Court is entitled to determine coverage. *Sands on the Ocean Condo. Ass'n v. QBE Ins. Co.,* 2009 WL 790120 (S.D. Fla. 2009).

    Vista View acknowledges that underground pipes are not covered property under the Chubb policy (DE 48 at 5), yet seeks to require Chubb to pay this non-covered item, plus the

---

[1] Although appraisal is an informal proceeding, to which the formal trial-type procedures of the Arbitration Code are inapplicable, the Florida Arbitration Code does apply in confirming appraisal awards, and is in fact the only authority for confirmation of the award which Vista View seeks. *See* § 682.13, Fla. Stat.; *Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co.*, 250 F.Supp.2d 1357 (M.D. Fla. 2003), *aff'd,* 362 F.3d 1317 (11th Cir. 2004)(confirming appraisal award and rejecting State Farm's argument that *Allstate v. Suarez*, 833 So. 2d 762 (Fla. 2002) changed Florida law with respect to the enforcement *vel non* of appraisal awards).

associated, and likewise uncovered, cost of unearthing to access the plumbing system.[2] These costs, which total $366,886.80, are clearly not recoverable from Chubb. Vista View's attempt to collect the entire appraisal award amount while admitting that this portion is not covered is untenable.

Vista View inappropriately characterizes the dispute with Chubb prior to appraisal as a disagreement as to the cost necessary to complete the repairs. The truth is that Chubb did not dispute the amount of the original claim because, at that point in time, the only claim tendered by Vista View was damages for the clean up of the common walkway, corridor and entrance tiles due to the sewer backup on December 30, 2007. DE 6 at 9. These ensuing damages were not excluded, so Chubb sent Vista View a check for $18,810,81 for the covered water damage.

However, months later, when Vista View submitted its supplemental claim for the unearthing and replacement of the underground sewer lines and for the tear out and replacement of the slab and tile, Chubb disputed whether there was a covered cause of loss for these additional elements of damage. This is because the Chubb policy only pays for "direct physical loss or damage to building . . . caused by or resulting from a peril not otherwise excluded and "Building does not mean: . . . underground pipes, flues or drains; . . . paved or concrete surfaces; . . . cost of excavations, grading, backfilling or filling; foundations or supports of structures, machinery or boilers, below the surface of the lowest floor or basement; . . . ." DE 22, Ex. A at A 00068-69. Nonetheless, Chubb attempted to investigate the supplemental claim for replacement of the sewer lines and to determine whether there was a covered cause of loss.

Thus, Vista View's claim that Chubb refused to commence the appraisal process ignores the fact that Chubb was in the process of investigating the cause of loss for the replacement of the sewer lines and that Vista View made every effort to block Chubb's investigation, as fully explained in Chubb's Motion to Compel Property Inspection. (DE 10).

In paragraph 8, Vista View claims that "the appraisal panel determined the amount of the loss while simultaneously determining that the cause of loss is covered under the subject policy of insurance." This claim is factually false. Although Chubb moved the Court for appraisal of covered items only or, alternatively, for line-item appraisal of covered and non-covered items,

---

[2] *See* DE 22, Ex. A, at A 00068-69 (excluding underground pipes and excavations, grading, backfilling or filling from the definition of building).

Chubb's motion was denied. (DE 26). Accordingly, consistent with this Court's ruling, the appraisal panel determined the amount of loss as well as the cause of loss, which according to the independent plumbing contractor, My Plumber of South Florida, Inc., was due to "several areas where the pipes are sagging causing low spots where the waste cannot drain and the grease builds up, eventually leading to the [sewer] stoppages." (DE 43-1 at A00005). However, in no way did the panel determine whether the cause of loss was covered under the Chubb policy. In fact, the first page of the Appraisal Award specifically states that the Appraisal Award is "3. Subject to terms and conditions of the insurance policy." (DE 43-1 at A 00001).

In paragraph 10, Vista View states that the independent plumbing contractor confirmed the findings of the prior inspections "that the cause of the backups which the buildings experienced was due to a plumbing line break within its plumbing system." This statement is untrue. As for the findings of prior inspections, they were as follows:

- TDT's 2/6/08 report concluded, "Grease buildup was noted throughout the lines in the sanitary system" and that the cast iron pipe was "in fair-to-poor condition." (DE 6, Ex. A at 104 & 105)

- SEA Ltd.'s 3/19/08 report concluded that "there was no evidence of collapsed lines in any of the common sanitary piping; therefore collapsed lines did not cause the backup of the sanitary system . . ." The report also concluded that the "sanitary system piping . . . exhibited heavy grease build-up [which] can cause a sanitary system to clog and back-up during times of heavy usage [and that] [h]eavy grease build-up can reasonably be attributed to a lack of maintenance." (DE 6, Ex. B at 00053).

- David Wills, P.E.'s (Exponent Engineering) 4/7/09 report concluded that "the sewer . . . was so severely choked with grease" and that, after 37 years, the underground pipes had basically come to the end of their useful life. (DE 23, Ex. 2 at p. 7 of report)

Contrary to Vista View's claim, the independent plumbing contractor retained by the appraisal panel confirmed the earlier findings of TDT, SEA, Ltd. and Wills, concluding that the plumbing systems in all four buildings contained a large amount of grease and that "there are several areas where the pipes are sagging causing low spots where the waste cannot drain and the grease builds up, eventually leading to stoppages." (DE 43, Ex. A at A 0005).

In paragraph 11 of Vista View's Memorandum in Opposition, Vista View argues it should be entitled to the replacement cost value amount reflected in the award, not actual cash

value (ACV) because the buildings were sold and a full credit for the repairs was issued to the buyer. Vista View has not filed any documents supporting this contention, which claim is both faulty and contrary to the terms of the policy.[3]

Vista View claims that Chubb attempts to mislead the Court into believing that there exists no break in the plumbing line. This simply is not true. Chubb has never said there was not a break in the plumbing lines. The fact that there was a break or breaks in the pipes does not, in and of itself, mean there is coverage for the loss. The terms of the policy require that the loss be investigated so as to determine why the pipe(s) broke -- in other words, what was the cause of loss. The answer, as evidenced by all the reports cited above, is that the breaks in the underground sanitary pipes occurred because the pipes have reached the end of their useful life, are in poor condition, exhibit heavy grease buildup, and are sagging in spots, all of which are the result of lack of maintenance, many years of wear and tear, corrosion and/or poor design. The subject policy specifically excludes coverage for causes of loss of this type.

Under Vista View's logic, as long as Vista View can establish that the pipes broke, it is entitled to complete coverage for all elements of the loss, regardless of the cause of loss (why the pipes broke) or whether such cause is covered or not covered. Under Vista View's flawed analysis, every insured property owner who suffers an underground pipe break would obtain coverage for the cost to excavate the underground pipe, repair/replace all the pipes, and tear out/repair the pipes, regardless of the cause, whether it be from corrosion, lack of maintenance, design defect, wear and tear, intentional destruction, or any other potentially excluded cause.

Common sense and the policy language dictate that Vista View's logic and approach is misguided. Because Vista View seeks only damages for replacement of the pipes themselves and the associated costs, the focus, as was the focus of the independent plumber and the earlier plumbing experts, must be on what caused the pipes to break and whether such cause is covered. As the experts concluded, the reasons why the pipes broke resulting in a sewer backup (i.e.

---

[3] The policy's terms provide that covered property will be valued at the cost to repair or replace it at the time of loss or damage, less allowance for physical deterioration and depreciation, if the covered property is not repaired or replaced. DE 22, Ex. A at A 00061. Thus, actual cash value refers to the value of the property at the time of loss, which reflects depreciation, while replacement cost refers to the actual cost of repairing or replacing the property when it is repaired or replaced. To date, Vista View has offered no proof (i.e., receipts) that the property has been repaired or replaced.

causes) were because of lack of maintenance, many years of wear and tear, corrosion and poor/defective design. *See* DE 48, Ex. A (finding grease buildup, corrosion, and poor maintenance). In sum, Chubb has rightly focused this Court's attention on the causes of loss as determined by the experts, and on whether such causes are covered or excluded by the terms of the policy, not solely on the fact that there were breaks in the pipe, as Vista View urges this Court to do. For example, Vista View states: "To put simply, a backup caused by a broken plumbing line would be the non-excluded peril which would trigger coverage for Petitioner's loss, including the tear out provision as contained in the policy of insurance." DE 48 at 4. Clearly, Vista View's simple analysis, unsupported by any cited case law or policy language, chooses to ignore those terms of the policy which preclude coverage such as the definition of "building" that excludes underground pipes and the cost of excavations, grading, backfilling or filling, and applicable exclusions that exclude damage caused by any faulty, inadequate, or defective planning, design, materials or maintenance, or by corrosion or wear and tear. (For a detailed discussion of the pertinent policy provisions see DE 6, Chubb's Answer, Affirmative Defenses and Counter-Petition, ¶¶ 34-53).

In paragraph 13 of its Memorandum in Opposition, Vista View's counsel admits that in his opinion, the cost of the actual pipe itself was not covered. The Appraisal Award estimated this cost to be $156,312.28 ACV ($175,770.00 RCV), plus another $191,116.80 for unearthing the underground pipes, for a total uncovered portion of $347,429.08 (or $366,886.80 RCV). Yet, in Petitioner's "Wherefore" clause, Vista View seeks the full amount of the Appraisal Award ($916,691.63) less prior payments made by Chubb, without providing Chubb with even a $156,312.28 credit for the cost of the replacement pipe that Vista View's counsel admits is not covered. *See Citizens Property Ins. Corp. v. Cuban-Hebrew Congregation of Miami, Inc.,* 5 So. 3d 709, 711-712 (Fla. 3d DCA 2009)(holding that "[w]here, as here, the appraisers set the overall amount of the loss, but do not reduce the award for prior payments or the deductible, the insurer is entitled to make those deductions" and further "[i]f the insured disagrees with [the insurer's] calculation, that issue is to be resolved by the trial court").

In the same paragraph, Vista View claims that the cost to access the plumbing system (unearthing) would be covered. Vista View also claims that the tear out and replacement costs are covered based on the following policy provision:

**Costs to Tear Out and Replace Parts of Building**

> If loss or damage caused by or resulting from the escape of water or other liquid, powder or molten material occurs <u>and such escape is caused by or results from a peril not otherwise excluded</u>, we will pay for the cost to tear out and replace any part of a **building** to repair or replace a system or appliance from which water or other substance escapes.  (DE 22, Ex. A, at A00062).

In its reading of the above provision, Vista View has arbitrarily elected to exclude the phrase "is caused by or results from a peril not otherwise excluded."  As fully explained in paragraphs 12-15 of Chubb's Motion to Confirm Covered Portions of Appraisal Award (DE 43), there is no coverage extended under this provision for the tearing out and replacement of the slab and tile because here the escape of water did not result from a covered peril ("a peril not otherwise excluded").  Rather, the escape of water resulted from excluded wear and tear, corrosion, poor design and maintenance.  *See General Accident Ins. Co. v. Unity/Waterford-Fair Oaks, Ltd.*, 288 F.3d 651 (5th Cir. 2002)(holding that there was no coverage where policy excluded underground pipes from covered property and there was no evidence that the destruction of the underground pipes resulted from water damage that was covered by the policy).  Because the appraisal panel determined that excluded perils caused the damage and associated need for unearthing and replacing the pipes, the damages for tearing out, replacing, and retiling the buildings are not covered.[4]

Chubb's payment of $18,810.81 was for the cost to clean up the common area walkway, corridor, and entrance tiles.  However, from the onset of this case, Chubb has maintained that the policy does not provide coverage for the other elements of loss including unearthing ($191,116.80) and replacement of the pipes ($156,312.28), or for tear out and replacement of the concrete slab and tile ($473,959.12).

Vista View, in a roundabout way, appears to suggest that because Chubb, early on, paid $18,810.81 as a result of damages which occurred from the sewer backup, that all damages sought by Vista View are covered.  Applying common sense reasoning in interpreting *State Farm v. Licea,* the Second District Court of Appeal in Florida appropriately stated, "A coverage issue may exist, of course, even where the insurer has not denied the claim as a whole.  The issue of coverage is not necessarily a matter of all or nothing." *Liberty American Ins. Co. v. Kennedy,* 890 So. 2d 539, 541 (Fla. 2d DCA 2005).

---

[4] The above-referenced provision likewise does not extend coverage for unearthing the pipes themselves, which is excluded from the policy's definition of "**building**."

Chubb agrees that in this case, causation is an amount-of-loss question to be determined by the appraisal panel. The independent plumber's report, made part of the Appraisal Award, concluded that it was the buildup of grease and buckling of the sewer lines that caused the damage.[5] DE 43-1 at A00005. This is consistent with the other experts' reports that wear and tear, corrosion, and grease build up stemming from more than 30 years of use and poor maintenance caused the loss. The policy clearly excludes this type of cause of loss. Moreover, although the appraisal panel was obligated to determine amount of loss and causation, issues of coverage are reserved for this Court. Submission of the claim to appraisal does not foreclose Chubb from later challenging an element of loss as not being covered by the policy. *Liberty American, supra.*.

Vista View erroneously alleges that Chubb is attempting to alter the appraisal award. Respondent is not trying to alter the award but is simply and rightfully trying to pay what the insurance policy covers. Chubb is not contesting the amount of damages as determined by the panel; it is contesting coverage for the amount assessed which Chubb is entitled to do under Florida law. The Florida Supreme Court made clear that submission of a claim for appraisal does not foreclose an insurer's subsequent challenge of insurance coverage: "'A challenge to coverage is exclusively a judicial question.' (citation omitted). If a court decides that coverage exists, the dollar value agreed upon under the appraisal process will be binding upon both parties." *State Farm Fire & Cas. Co. v. Licea,* 685 So. 2d 1285, 1287-88 (Fla. 1996).

Vista View argues that the issue of causation (and therefore coverage) was determined by the appraisal panel when it rendered its award. Vista View relies on the report of David Wills attached to its motion, erroneously claiming that because it describes finding that roots from trees entered the pipes, this amounts to a covered cause of loss. The report reflects that tree roots that are underground broke through pipes that are underground. The policy's definition of Building excludes underground pipes, and therefore underground pipes are never covered. If anything, tree roots breaking through cast iron pipes demonstrates lack of maintenance, faulty design, and years of wear and tear, not to mention corrosion, all of which are excluded causes of

---

[5] If this Court is uncertain whether the plumber's conclusions are determinative, Chubb does not oppose sending the claim back to the appraisal panel for a determinative report as to the cause of the need for replacing the pipes. *See Citizens Property Ins. Corp. v. Cuban-Hebrew Congregation of Miami, Inc.,* 5 So. 3d 709, 712 (Fla. 3d DCA 2009)reasoning that the trial court

loss. Not surprisingly, Vista View fails to cite to the conclusions of Wills' report that support Chubb's position that the sewage backup was caused by excluded causes of loss.[6] Moreover, unlike the independent plumbing report, the Wills report was not even part of the Appraisal Award.

Vista View's argument that the appraisal award included only covered damages, based on Chubb's counsel's argument that non-covered items should be excluded from the award, (DE 48 at 9) is untenable. Chubb did file a motion asking the Court to refer the case for an appraisal of covered items only. (DE 23). However, this Court denied the motion and ruled that the entire matter would go to appraisal, and that "the question of causation must be left to the appraisers." (DE 26 at 4). Consequently, the case proceeded to appraisal wherein the appraisal panel only determined the causes and amount of loss; the panel did not determine what elements of the loss are covered or not covered.[7]

Citing *Johnson v. Nationwide Mut. Ins. Co.* and *Three Palms Point,* Vista View claims that Chubb is precluded from having this Court determine coverage, even though Vista View has admitted there is no coverage for replacement of the pipes themselves. Vista View's position is that Chubb must pay for both covered and non-covered elements of the loss, simply because Chubb failed to deny the "loss as a whole," notwithstanding the fact that at the time it paid Vista View the $18,810.81 for cleanup resulting from the sewage backup, Chubb had no knowledge of Vista View's supplemental claim for damages to underground pipes that are excluded.

Contrary to Vista View's assertion, *Sands on the Ocean Condo. Ass'n v. QBE Ins. Co.,* 2009 WL 790120 (S.D. Fla. 2009), is directly on point and supports Chubb's position that this Court is not precluded from determining coverage under these circumstances.

In *Sands*, an appraisal award was entered in favor of Sands. The award stated:

NOTE: No attempt by the appraisers have (sic) been made regarding the interpretation of the Insurance Company Policy with Sands on the Ocean at the time of the claim. This appraisal award shall be valid and binding upon all parties concerned in that the decision made is unanimous, as evidenced by the signatures below. This award is made without any consideration of the [hurricane]

---

has the authority to require the appraisers to clarify the basis for the award).
[6] Wills' 4/7/09 report concluded that "the sewer . . . was so severely choked with grease . . ." and that, after 37 years, the underground pipes had basically come to the end of their useful life. (DE 48, Ex. A, at 7).
[7] The Appraisal Award states, "subject to terms and conditions of the insurance policy."

deductible amount or prior payments issued to the insured or any terms, conditions, provisions or exclusions of the above policy.

*Id.* at *1.

Sands moved to have the court confirm the appraisal award without addressing issues regarding coverage and the hurricane deductible claiming that, based on *Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co.,* 362 F.3d 1317 (11th Cir. 2004), once an appraisal award has been rendered the only defense available to the insurer, QBE, is lack of coverage for the entire claim or violation of one of the standard policy conditions such as fraud or lack of notice. *Id.* at *2.

The *Sands* court found that *Three Palms* was of limited use because of the disclaimer expressly included in the appraisal award by the appraisers. *Id.* The *Sands* court cited *Liberty American Ins. Co. v. Kennedy,* 890 So. 2d 539 (Fla. 2005), that stated *Three Palms* misinterpreted *Licea* and held "that 'the submission of [a] claim to appraisal does not foreclose . . . challenging an element of loss as not being covered by the policy.' *Kennedy,* 890 So. 2d at 541-42." *Id.* at *3. The *Sands* court concluded that based on *Kennedy* and the appraisal award language, QBE was entitled to challenge coverage as to portions of the appraisal award. *Id.*

Here, the appraisal award states in bold print that it is "subject to terms and conditions of the insurance policy." Thus, here, as in *Sands,* the award indicates that the appraisers have not interpreted the policy with respect to coverage. In accordance with *Sands* and the terms and conditions of the Chubb policy, this Court should confirm the covered portion of the Appraisal Award in the amount of $61,549.17, and hold that Vista View is entitled to recover that amount, less the prior payment of $18,810.81, for a total of $42,738.31.

WHEREFORE, Respondent, Chubb Custom Insurance Company, respectfully requests that this Court confirm the covered portion of the Appraisal Award, in the amount of $61,549.12, and hold that Vista View is entitled to recover that amount, less the prior payment of $18,810.81, for a total of $42,738.31, which has already been paid.

                              Respectfully submitted,

By:   s/Cindy L. Ebenfeld
       CINDY L. EBENFELD
       Fla. Bar No. 980579
       cebenfeld@mhickslaw.com

HICKS, PORTER, EBENFELD & STEIN, P.A.<br>
11011 Sheridan Street, Suite 104<br>
Cooper City, FL  33026<br>
Tel:     954/624-8700<br>
Fax:    954/624-8064<br>
*Attorney for Respondent*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on **March 10, 2010,** a true and correct copy of the foregoing was electronically filed with the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

**Served by mail:**
Leo A. Manzanilla, Esq.
LAW OFFICES OF LEO A. MANZANILLA, P.A.
770 Ponce de Leon Blvd., Suite 101
Coral Gables, FL 33134
Tel:     305/444-1887
Fax:    305/666-8427
Email: lawmanzanilla@hotmail.com
*Attorney for Petitioner*

s/Cindy L. Ebenfeld

g:\chubb\vista view\pldg\mol-reply conf appraisal.doc